IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| BRENDALYN C. NICHOLAS, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:18-cv-1073 |
| ) | |
| MOBILE INFIRMARY ) | JURY TRIAL DEMANDED |
| ASSOCIATION, ) | |
| DR. BENJAMIN J. MAKAMSON ) | |
| and, VASCULAR ASSOCIATES ) | |
| OF SOUTH ALABAMA, LLC., ) | |
| ) | |
| *Defendants*. ) | |

## COMPLAINT

### INTRODUCTION

This case is about how certain "men" in positions of power, use that power to impose their will and themselves on women in vile and foul sexual ways – ways that Americans struggle, even today, to acknowledge as sad truths. This case is about the defendants named herein, a highly skilled and by many accounts, respected surgeon who, with the *defacto* support of an enabling corporate hospital, allows sexual harassment and assault to occur within its work environment and, in its most severe form.

### PARTIES

1

1. Plaintiff, Brendalyn C. Nicholas, a resident of Montgomery County, in the Middle District of Alabama, and a female over the age of nineteen is, and has been a highly-skilled surgical nurse since 2010. During the relevant time, Plaintiff was a nearly fifteen-year employee at the defendant's facility, Mobile Infirmary Medical Center (MIMC).

2. At all times pertinent, Plaintiffs' former employer, pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. sec 2000 (*et. seq*), was the **defendant, Mobile Infirmary Association**, a Mobile, Alabama, domestic non-profit corporation registered in the state of Alabama.

3. At all times pertinent, the **defendant**, Dr. Benjamin J. Makamson, was a surgeon and agent of Mobile Infirmary Association who performed medical services at MIMC.

4. At all times pertinent, the **defendant**, Vascular Associates of South Alabama, LLC is the employer of Defendant Makamson and, is an Alabama-registered limited liability company.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction in this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The jurisdiction of this Court is invoked to secure

protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy in this action exceeds the jurisdictional limits of this Court. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. Plaintiff filed a complaint on August 31, 2017 with Mobile, Alabama local office of the United States Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, including violations of sex discrimination, retaliation and allegations of sexual harassment.

7. On September 26, 2018, Erica Lacour, Equal Employment Opportunity Commission Administrative local office director, dismissed Plaintiff's case, citing her inability to "conclude that the information [submitted] established violations of the statutes" and, she provided notice of Plaintiff's right to sue by December 26, 2018.

## GENERAL FACTUAL ALLEGATIONS

8. Prior to March 2017 Plaintiff had fifteen (15) years of nursing experience with increasing responsibility, including the prestigious position of surgical nurse and specializing in heart and eye surgery.

9. Plaintiff began her career at MIMC in 2002 as a scrub technician.

10. She later became a surgical technician while attending nursing school to obtain her registered nurse license.

11. After becoming a registered nurse, Plaintiff was immediately assigned to surgery, an environment with which she had become very familiar.

12. During Plaintiff's employment at Mobile Infirmary she has never been subject of disciplinary actions nor, have there been any allegations that Plaintiff has filed false allegations against persons she has worked with.

13. On or about March 21, 2017 Plaintiff was serving as surgical nurse in the main operating room of Defendant, MIMC.

14. Defendant, Dr. Benjamin Makamson was the surgeon on duty in the main operating room in which Plaintiff was working on March 21, 2017. Defendant Makamson supervised the surgical procedures and staff, including Plaintiff when he performed surgeries at MIMC.

15. While Plaintiff was preparing the room and the patient post-surgery, on March 21, 2017, Defendant Makamson, initiated continuous jokes about "having sex with a panda bear" in response to a radio show that posed the question of "what not to do on a first date."

16. Plaintiff grew uncomfortable with Defendant Makamson's comments and requested that he refrain from making such comments. She threatened to document these comments if he continued.

17. Moments later, Plaintiff witnessed Defendant Makamson touch or "poke" a

4

fellow female nurse-employee, R.B., in the chest. Plaintiff was offended and later inquired of R.B. if Defendant Makamson had indeed "poked" her in the chest. R.B. answered in the affirmative.

18. Next, during the same March 21 post-surgical incident, as Plaintiff was in the vulnerable position of attempting to prevent an unconscious patient from falling out of bed, Defendant Makamson took his fingers and, through her surgical clothing, poked her several times in her lower back and once between the cheeks of her buttocks, aggressively and forcefully pressing his fingers about the edges of Plaintiff's anal area.

19. Plaintiff could not defend herself against the attack because she would have caused harm to the unconscious patient she was caring for at that time.

20. Plaintiff was shocked and mortified about what she believed to be a sexual assault, but attempted to remain calm due to the imminent, critical care required for the patient who which was just out of surgery.

21. Unsolicited by anyone and recognizing that Plaintiff was upset by his sexual toughing of her, Defendant Makamson was heard by several employees saying, "I may need a lawyer" and, "I had better call my attorney."

22. On March 21, 2017, immediately after the surgery was complete and her patient was stable, Plaintiff complained about the sexual assault to her co-workers and formally to Ann Sands, her immediate supervisor at MIMC.

23. The following morning, on or about March 22, 2017, Plaintiff formally

      complained about the sexual assault to additional MIMC officials — her director, Ashley Simmons and Team Leader, Pat McDonald.

24. On March 22, 2017, Plaintiff was placed on administrative leave due to the physical and mental difficulties she experienced while coping with Defendant Makamson's assault upon her.

25. On March 29, 2017, Plaintiff formally complained about the sexual assault to MIMC Human Resources official, Melissa Boesen.

26. Plaintiff returned to work on or about May 6, 2017.

27. After her return to work on May 6, Plaintiff expressed to her supervisors her mental distress and depression because of the sexual assault. She informed her MIMC supervisors that she did not want any interaction, whatsoever with Dr. Makamson while at work.

28. Instead of removing Defendant Makamson from the work environment, MIMC reassigned Plaintiff to nursing duties in the "outpatient" department, a position much less prestigious and fulfilling for Plaintiff and, one with much less professional nursing responsibility than the main operating room nurse position she had prior to being assaulted by Defendant Makamson.

29. From May 6, 2017 and after, Plaintiff was frightened, disgusted and mortified by additional encounters with Defendant Makamson in the hallways and about the hospital floors of MIMC.

30. On or about June 10, 2017, Plaintiff again complained to her supervisors about the negative impact of her experience with Defendant Makamson, the fear of encountering Defendant Makamson in the main operating room environment and the emotional suffering, physical pain, depression and anxiety she suffered constantly since the March 21 assault.

31. On or about June 10, 2017, Plaintiff's Human Resources department approved FMLA time off for Plaintiff and required her to attend mandatory Employee Assistance Program (EAP) for work-fitness evaluation.

32. MIMC subjected Plaintiff to mandatory drug screening between June 10, 2017 and July 5, 2017.

33. Plaintiff was cleared to return to work duties on July 5, 2017.

34. From on or about July 5, 2017 through September 12, 2017, Plaintiff was assigned and worked in the outpatient surgical department, which primarily entailed "paperwork" duties — a significant diminution to her role of performing active, critical care nursing duties she previously performed in the main operating room prior to March 22, 2017.

35. On or about September 12, 2017, MIMC supervisors requested that Plaintiff perform surgical nursing duties for an eye patient in the main operating room, due to an absence of another nurse. The surgery was to take place in the environment that she was in on March 21, 2017.

36. Although she was assured by her supervisors that Defendant Makamson would not be in the main operating room, Plaintiff was fearful, stressed and had severe anxiety that she would encounter Defendant Makamson.

37. Plaintiff left the September surgery traumatized, under tremendous stress and depression.

38. Plaintiff felt that she would never be safe again if Defendant Makamson could continue working as a physician at the hospital Plaintiff had worked for the better part of fifteen (15) years.

39. Plaintiff avers that MIMC did nothing to address her concerns about what she believes may have been a criminal act committed against her by Defendant Makamson and, after September 12, 2017, she was extremely afraid to return to work at MIMC again because of MIMC's lack of proper action against Makamson.

40. Plaintiff was so fearful for her safety and so distraught about Defendant Makamson's assault and the inaction of MIMC, she, after the better part of fifteen (15) years of employment at MIMC, never returned to work at MIMC after September 12, 2017.

## COUNT 1
## SEXUAL HARRASSMENT GENDER DISCRIMINATION

41. Plaintiff incorporates as if fully restated all the allegations previously written.

8

42. Plaintiff was subjected to unwelcome, offensive and harassing sexually discriminatory conduct during her employment with Mobile Infirmary Medical Center which was perpetrated upon her by Defendant Makamson, and her Supervisors, at MIMC, and that this conduct was based upon and directed at Plaintiff by reason of her gender.

43. Plaintiff noticed MIMC supervisors, executives and Human Resources, which was otherwise made aware, of the sexually harassing and discriminatory conduct, but MIMC failed to take any appropriate corrective action.

44. This sexually harassing and discriminatory conduct was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's physical health, work performance and to create an intimidating, hostile and offensive working environment.

45. The Defendants' harassment ruined the reputation and credibility of Plaintiff, a seasoned surgical nurse, and created an atmosphere of hostility which severely damaged the reputation in the eyes of her co-workers and peers.

46. Moreover, this conduct was ongoing and pervasive and constituted a "continuing violation" of Plaintiff's right. During her employment, Plaintiff was forced to work in a sexual discriminatory and hostile environment.

47. MIMC was put on notice of the sexually suggestive nature of its agent, Defendant Makamson, and failed to take immediate corrective action, all to

9

Plaintiff's detriment.

48. MIMC officials were made aware of the hostile work environment and acquiesced in the environment.

49. Defendant Makamson's sexually offensive actions against Plaintiff were open and obvious to other employees, both management and non-management at MIMC.

50. Other MIMC workers complained to MIMC Management regarding harassing behavior towards Plaintiff during the times referenced in Plaintiff's complaint, yet no corrective action was taken.

51. On information and belief, an independent internal investigation by MIMC or a third-party investigative body substantiated Plaintiff's allegations of sexual harassment in Plaintiff's workplace.

52. As a direct and proximate result of the harassing and hostile sexual environment of MIMC, its official and supervisors, and Defendant Makamson, Plaintiff suffered great embarrassment, humiliation and mental and physical anguish.

53. During Plaintiff's employment with Mobile Infirmary Association, the Defendant, by and through its agents and employees, discriminated against the Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et. seq.*

54. The above-described unwelcome sex discrimination created an intimidating, oppressive, hostile and offensive work environment which interfered with Plaintiff's emotional and physical well-being.

55. Defendant Mobile Infirmary Association through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct and acts of its agent, Defendant Makamson as described above.

56. Defendant Mobile Infirmary Association failed to take all reasonable and necessary steps to eliminate sex discrimination and harassment from the workplace and to prevent it from occurring in the future.

57. As a further direct and proximate result of Defendant's violation of Title VII of the Civil Rights Act of 1964 *et. seq.* as described, Plaintiff has been compelled to retain the services of counsel to enforce the terms and conditions of the employment relationship with Mobile Infirmary Association and has thereby incurred and will continue to incur legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff.

## COUNT II
## CONSTRUCTIVE DISCHARGE

58. Plaintiff incorporates as if fully restated all the allegations previously written.

59. Plaintiff followed all the proper protocol when she reported the sexual

assault of Defendant Makamson upon her.

60. She informed MIMC supervisors, executives and Human Resources.

61. Instead of discharging Defendant Makamson from Mobile Infirmary Association employ or agency relationship, Mobile Infirmary Association allowed Makamson to continue to roam the halls of MIMC and, for Plaintiff to encounter Makamson whenever they were both on site.

62. Moreover, MIMC supervisors assigned Plaintiff to "paperwork" duties of the outpatient surgical unit versus the prestigious, gratifying critical-care work performed in the main operating room.

63. Because of the assault committed by Defendant Makamson and the inaction of Mobile Infirmary Association to remedy the environment of the perpetrator of sexual assault, Mobile Infirmary Association created a work environment such that a reasonable person in Plaintiff's position would have been compelled to do what Plaintiff did — resign from her duties at MIMC.

## COUNT III
## ALABAMA STATE-LAW CLAIM (ASSAULT and BATTERY)

64. Plaintiff incorporates as if fully restated all the allegations previously written.

65. The intentional torts of assault and battery are well settled in Alabama jurisprudence. "Assault" has been defined as "an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such

circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Western Union Tel. Co. v. Hill*, 25 Ala.App. 540, 542, 150 So. 709, 710 (1933) (emphasis added). *See also Wright v. Wright*, 654 So. 2d 542, 544 (Ala.1995).

66. Defendant Makamson's physical intrusion onto Plaintiff's buttocks clearly constitute assault.

67. Defendant Vascular Associates of South Alabama, LLC is the employer of Defendant Makamson and as such, is liable for Makamson's actions against Plaintiff.

68. Defendant Makamson touched Plaintiff; he intended to touch Plaintiff; and, Defendant Makamson conducted his touching in a harmful and offensive manner.

69. The Alabama Supreme Court has explained that "[a] battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner ... or in any way touching him in anger, or violently jostling him out of the way, or in doing any intentional violence to the person of another." *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala.1986) (quoting *Singer Mach. Co. v. Methvin*, 184 Ala. 554, 561, 63 So. 997, 1000 (1913) (emphasis added)).

70. In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190 (Ala. 1998) (emphasis added).

71. Defendant Makamson's highly offensive touching of Plaintiff's buttocks during the surgery was, at minimum, rude and insolent. Plaintiff contends that Defendant Makamson's inappropriate sexual comments prior to the assault, coupled with his admission that he would "need a lawyer" provide strong indicia that Makamson intended to cause the harm.

**WHEREFORE**, Plaintiff, Brendalyn Nicholas, demands judgment against the Defendants, in an amount which will compensate her for:

a)   Violation of her rights under Title VII of the Civil Rights Act of 1964;

b)   Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliation, past and future; and past and future medical expenses;

c)   Punitive damages to punish the Defendants for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

d)   Trial by jury on all issues so triable;

e)   Costs expended herein, including reasonable attorneys' fees;

f)   Pre-judgment and post-judgment interest; and

g)         Any and all other relief to which she may be entitled.

Respectfully submitted this 26th day of December 2018.

*(signature)*

Joseph Mitchell McGuire
Bar No. ASB-8317-S69M
McGuire & Associates, LLC
31 Clayton Street
Montgomery, Alabama 36104
(334) 507-1000 phone
(334) 517-1327 fax
jmcguire@mandabusinesslaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

On December 26, 2018, I filed the Complaint in the above styled cause over the counter with the Clerk of the Court and delivered the same to the following parties via U.S. Certified Mail:

Mobile Infirmary Association
5 Mobile Infirmary Circle
Mobile, Alabama 36607

Dr. Benjamin J. Makamson
124 University Boulevard
Mobile, Alabama 36608

Vascular Associates of South Alabama, LLC
124 University Boulevard
Mobile, Alabama 36608

*Joseph Mitchell McGuire*

## VERIFICATION

Before me, the undersigned notary, on this day personally appeared Brendalyn C. Nicholas, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

"My name is Brendalyn C. Nicholas. I have read the Complaint. The facts stated in it with regard to the content therein are within my personal knowledge and are true and correct."

Brendalyn C. Nicholas

SWORN TO and SUBSCRIBED before me by Brendalyn C. Nicholas on December 26, 2018.

exp. 6/24/19

Notary Public in and for
the State of Alabama